IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Curtiss-Wright Electro-Mechanical Corporation<br>Plaintiff,<br><br>v.<br><br>Westinghouse Electric Company, LLC<br>Defendant. | )<br>)<br>)<br>)<br>)  JURY DEMANDED<br>)<br>)  Case Number: 2:21-cv-390<br>)<br>) |

**COMPLAINT**

1. This case arises out of Defendant Westinghouse Electric Company, LLC's ("Westinghouse") breach and/or anticipatory repudiation of an agreement it entered with Plaintiff Curtiss-Wright Electro-Mechanical Corporation ("Curtiss-Wright") in which Westinghouse agreed to purchase thirty-two (32) Reactor Coolant Pumps for eight (8) US AP1000 Nuclear Power Plants from Curtiss-Wright.

2. Westinghouse and Curtiss-Wright (collectively, the "Parties") entered into the Letter of Subcontract Award on April 30, 2008 (the "Subcontract"). The purpose of the Subcontract is "to confirm the commitment of [Westinghouse] to issue Purchase Orders to [Curtiss-Wright] for the award of Reactor Coolant Pumps ('RCPs'), and related components, materials and other work for eight (8) US AP 1000 Nuclear Power Plants."

3. At the time the Parties entered the Subcontract, they had already agreed to the location for six (6) of the eight (8) US AP1000 Nuclear Power Plant RCP orders. By entering the agreement, Westinghouse committed to placing two (2) more US AP1000 Nuclear Power Plant RCP orders for a fourth, as yet unnamed, domestic AP1000 nuclear power plant. In exchange, Curtiss-Wright provided Westinghouse with a volume discount on all thirty-two (32) Reactor Coolant Pumps and services related to their sale.

4.  Rather than fulfill its obligations under the Subcontract, Westinghouse has announced that it is no longer in the nuclear power plant construction business and, therefore, cannot fulfill its commitment to purchase RCPs for the two (2) additional US AP1000 Nuclear Power Plants. Instead, nearly thirteen years since the Parties entered the Subcontract, Westinghouse has only entered into purchase orders with Curtiss-Wright for the supply of twenty-four (24) RCPs for six (6) US AP1000 Nuclear Power Plants. Curtiss-Wright brings this suit to recover the benefit of its bargain.

## Parties, Jurisdiction and Venue

5.  Plaintiff Curtiss-Wright is a Delaware corporation with a principal place of business in Pennsylvania. It is therefore a citizen of Delaware and Pennsylvania.

6.  As an LLC, Defendant Westinghouse Electric Company, LLC takes the citizenship of its members. *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015). On information and belief, Defendant's members are not citizens of Pennsylvania or Delaware.[1]

7.  The amount in controversy in this dispute exceeds $75,000.

8.  This Court has jurisdiction over this civil action pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between the Parties and the matter in controversy exceeds $75,000.

9.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events giving rise to Curtiss-Wright's claims occurred in this judicial district.

10. This Court's exercise of personal jurisdiction over Westinghouse comports with Pennsylvania's long arm statute and Due Process under the United States Constitution.

## Factual Allegations

---

[1] *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 108 (3d Cir. 2015) (permitting Plaintiff to plead an LLC's citizenship on information and belief).

11. Among many other product lines, Curtiss-Wright is in the business of supplying and servicing RCPs to nuclear power plant construction companies. At a basic level, RCPs cool the nuclear power fuel system so that nuclear power plants can operate safely and effectively. RCPs are highly complex products that use sophisticated technology, and they are critical to the operation of a nuclear power plant.

12. Manufacturing and delivering a RCP is a costly endeavor that requires significant advance planning and investment on behalf of a supplier such as Curtiss-Wright.

13. At the time the Parties entered the Subcontract, Westinghouse ran a business line in which it served as a construction contractor for AP1000 nuclear power plants. Prior to the Subcontract, Curtiss-Wright and Westinghouse entered into a variety of purchase orders on various projects related to the nuclear power industry.

14. By entering the Subcontract, Westinghouse agreed to purchase thirty-two (32) RCPs for eight (8) US AP1000 nuclear power plants from Curtiss Wright that would be located at four (4) US AP1000 nuclear power plants (with eight (8) RCPs being potentially installed at each of the four (4) US AP1000 nuclear power plants). At that time they entered the Subcontract, the Parties had agreed to three (3) of the locations: eight (8) RCPs for two (2) US AP1000 nuclear power plants for a site in Florida, eight (8) RCPs for two (2) US AP1000 nuclear power plants for a site in South Carolina, and eight (8) RCPs for two (2) US AP1000 nuclear power plants for a site in Georgia (collectively, the "Named Projects").

15. Under the Subcontract, the Parties agreed to specify the fourth site in the future, and Westinghouse committed to order eight (8) RCPs for that as-yet unnamed site (the "Unnamed Project," and collectively with the Named Projects, the "Projects").

16. Other than location, all the material terms for the Unnamed Project (such as price, quantity, and various terms and conditions) were agreed upon in the Subcontract.

17. Indeed, although the parties had not yet specified a location for the Unnamed Project, they made clear that the Subcontract was not an "agreement to agree" to purchase eight (8) additional RCPs in the future. Rather, they expressly agreed that the Subcontract was "a binding, interim measure to document [Westinghouse's] binding award of the Scope of Work for the Projects (defined to include the Unnamed Project) to [Curtiss-Wright]." Elsewhere, the Subcontract uses similar unequivocal language, stating Curtiss-Wright supply thirty-two (32) RCPs for eight (8) US AP1000 nuclear power plants.

18. Curtiss-Wright offered Westinghouse a reduced per-unit price based on Westinghouse's commitment to purchase thirty-two (32) RCPs for eight (8) US AP1000 nuclear power plants. If Westinghouse had only committed to ordering twenty-four (24) RCPs for six (6) US AP1000 nuclear power plants, Curtiss-Wright would have charged Westinghouse significantly more for those RCPs. Instead, Westinghouse agreed to purchase thirty-two (32) RCPs for eight (8) US AP1000 nuclear power plants and, in exchange, Curtiss-Wright provided a volume discount.

19. Further, Curtiss-Wright made significant investments based on Westinghouse's agreement to order thirty-two (32) RCPs for eight (8) US AP1000 nuclear power plants. Indeed, Westinghouse encouraged Curtiss-Wright to construct a new facility at its Cheswick, PA plant to build capacity to fill the RCP orders required by the Subcontract. In reliance on Westinghouse's representations, Curtiss-Wright also hired new personnel so that it would have capacity to build and deliver the eight (8) RCPs associated with the Unnamed Project.

20. Although Westinghouse committed to order thirty-two (32) RCPs for eight (8) US AP1000 nuclear power plants from Curtiss-Wright in 2008, as of March 2021, Westinghouse has only entered into purchase orders with Curtiss-Wright for the supply of twenty-four (24) RCPs for six (6) US AP1000 nuclear power plants (i.e. those associated with the Named Projects). It has not ordered the eight (8) RCPs associated with the Unnamed Project called for by the Subcontract. This failure to perform is a plain breach of the express terms of the Subcontract and the covenant of good faith and fair dealing.

21. Indeed, on information and belief, Westinghouse exited the nuclear power plant construction industry in or around September 2017—eliminating any possible way for Westinghouse to place an engineering, procurement and construction ("EPC") subcontract with Curtiss-Wright associated with the Unnamed Project. In other words, as of 2017, Westinghouse knew that it would not purchase the final eight (8) RCPs associated with the Unnamed Project under an EPC subcontract with Curtiss-Wright (notwithstanding its contractual commitments in the Subcontract). But because Westinghouse wanted to retain a windfall associated with the reduced per-unit price it obtained in the Subcontract, Westinghouse did not inform Curtiss-Wright that it had exited the relevant industry and therefore would never be ordering the final eight (8) RCPs associated with the Unnamed Project under an EPC subcontract with Curtiss-Wright.

22. It was not until 2019 that Westinghouse employee(s) indicated to Curtiss-Wright personnel that Westinghouse intended to exit, or had exited, the nuclear power plant construction industry.

23. It is clear from Westinghouse's conduct, inaction, and express representations to Curtiss-Wright that Westinghouse has not and will not purchase the final eight (8) RCPs associated

with the Unnamed Project under an EPC subcontract with Curtiss-Wright called for in the Subcontract. This is a clear breach and/or anticipatory repudiation of the Parties' agreement.

24. Westinghouse's breach and/or anticipatory repudiation has damaged Curtiss-Wright in several respects. First, Curtiss-Wright has not received the benefit of its bargain with Westinghouse, because Westinghouse has not purchased and paid for the eight (8) RCPs associated with the Unnamed Project under an EPC subcontract with Curtiss-Wright, Curtiss-Wright is entitled to the benefit of its bargain with Westinghouse, and Westinghouse should therefore be compelled to pay Curtiss-Wright the price of the final eight (8) RCPs associated with the Unnamed Project, which is a total of at least $118,400,000.

25. In the alternative, Curtiss-Wright must be compensated for actions it took in reliance on Westinghouse's representations that it would purchase the final eight (8) RCPs associated with the Unnamed Project. For example, Curtiss-Wright provided Westinghouse with a per-unit discount based on Westinghouse's commitment to purchase thirty-two (32) RCPs for eight (8) US AP1000 nuclear power plants. Had Curtiss-Wright known that Westinghouse would only enter into purchase orders with Curtiss-Wright for the supply of twenty-four (24) RCPs for six (6) US AP1000 nuclear power plants, it would have charged Westinghouse a significantly higher per-unit price. This is made clear in the Subcontract, which states that the price reflected in the agreement is conditional on Westinghouse "issuing to [Curtiss-Wright] an additional purchase order for the Other Project." As such, Curtiss-Wright is entitled to recoup the difference between the price it charged and the price it would have charged had it known Westinghouse would have only entered into purchase orders for Curtiss-Wright to supply twenty-four (24) RCPs for six (6) US AP1000 nuclear power plants.

26. In the alternative, Curtiss-Wright also incurred significant overhead costs—including personnel costs and capital expenditures—as a result of Westinghouse's representations that it would purchase thirty-two (32) RCPs for eight (8) US AP1000 nuclear power plants. In total, Westinghouse's refusal to order the final eight (8) RCPs associated with the Unnamed Project under the Subcontract has cost Curtiss-Wright at least $50,900,000 in the form of overhead costs expended in reliance on Subcontract and in the discount Westinghouse received based on its false promise that it would purchase RCPs for eight (8) rather than six (6) US AP1000 nuclear power plants.

### COUNT I – Breach of Contract

27. Curtiss-Wright re-incorporates and re-alleges the preceding paragraphs herein.

28. Westinghouse's actions, as set forth herein, constitute a breach of the Subcontract.

29. The Subcontract is a binding agreement that Westinghouse and Curtiss-Wright freely entered.

30. Curtiss-Wright has satisfied all of its obligations under the Subcontract.

31. Westinghouse's commitment to purchase thirty-two (32) RCPs from Curtiss-Wright for eight (8) US AP1000 nuclear power plants is a material term of the Subcontract.

32. Westinghouse's failure to purchase thirty-two (32) RCPs from Curtiss-Wright for eight (8) US AP1000 nuclear power plants constitutes a breach of a material term of the Subcontract.

33. In the alternative, if Westinghouse's performance has not yet come due, then Westinghouse has anticipatorily breached the Subcontract by indicating to Curtiss-Wright through its words and conduct (including by telling Curtiss-Wright that Westinghouse no longer planned to participate in the nuclear power plant construction business). Indeed, Westinghouse's

statements eliminated any possible way for Westinghouse to place an EPC subcontract with Curtiss-Wright associated with the Unnamed Project called for by the Subcontract. Moreover, Westinghouse's verbal confirmation to Curtiss-Wright that it has exited, or intended to exit, the nuclear power plant construction industry constitutes a positive statement of an impossibility to perform under the terms of the Subcontract.

34. Curtiss-Wright has satisfied all conditions precedent to filing this action, including by agreeing to mediate its claims with Westinghouse.[2]

35. As a direct and proximate result of Westinghouse's breach of the Subcontract, Curtiss-Wright has suffered and will continue to suffer damages in an amount not yet determined but that is estimated to be greater than $118,400,000.

WHEREFORE, Plaintiff Curtiss-Wright prays for the following relief:

a. Judgment to be granted in its favor, requiring Defendant Westinghouse to pay compensatory and punitive damages in an amount to be determined;

b. An award of reasonable attorneys' fees; and

c. Such additional relief as the Court may deem just or equitable.


Dated March 24, 2021                By: /s/ Jason E. Hazlewood

                                    Jason E. Hazlewood (Pennsylvania Bar No. 93443)
                                    Reed Smith LLP
                                    225 Fifth Avenue
                                    Pittsburgh, PA 15222
                                    Tel: 412.288.3131
                                    Fax: 412.288.3063
                                    E-Mail: jhazlewood@reedsmith.com

---

[2] The Subcontract contains a provision requiring the Parties to mediate any disputes arising out of the agreement. Curtiss-Wright is honoring that provision and, accordingly, will move for a stay of this matter pending mediation shortly after filing this Complaint. By filing this Complaint, Curtiss-Wright does not intend to waive its right to mediation (or any other rights under the Subcontract).

Brian T. Phelps (Pennsylvania Bar No. 326172)
Reed Smith LLP
10 S. Wacker Drive, 40th Floor
Chicago, IL 60606
Tel: 312.207.1000
Fax: 312.207.6400
E-Mail:  bphelps@reedsmith.com


*Attorneys for Plaintiff*
*Curtiss-Wright Electro-Mechanical Corporation*

## **CERTIFICATE OF SERVICE**

I, Jason E. Hazlewood, an attorney, hereby certify that, on March 24 2021, I caused a true and correct copy of the foregoing document to be served on all counsel of record through electronic mail, as follows:

John Ducat
DLA Piper LLP
John.Ducat@us.dlapiper.com

Robert Crewdson
DLA Piper LLP
Robert.Crewdson@us.dlapiper.com

*/s/ Jason E. Hazlewood*