IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Curtiss-Wright Electro-Mechanical Corporation<br>Plaintiff,<br><br>v.<br><br>Westinghouse Electric Company, LLC<br>Defendant. | Case Number 2:21-cv-390<br><br>JURY DEMANDED |

## FIRST AMENDED COMPLAINT

1. This case arises out of Defendant Westinghouse Electric Company, LLC's ("Westinghouse") breach of an agreement it assumed as part of a Chapter 11 proceeding.

2. Pre-bankruptcy Westinghouse[1] and Curtiss-Wright entered into the Letter of Subcontract Award on April 30, 2008 (the "Subcontract"). The purpose of the Subcontract is "to confirm the commitment of [Westinghouse] to issue Purchase Orders to [Curtiss-Wright] for the award of Reactor Coolant Pumps ('RCPs'), and related components, materials and other work for eight (8) US AP 1000 nuclear Power Plants."

3. At the time the parties entered the Subcontract, they had already agreed to the location for six of the eight US AP1000 nuclear power plant RCP orders. By entering the agreement, pre-bankruptcy Westinghouse committed to placing two more US AP1000 nuclear Power Plant RCP orders for a fourth, as yet unnamed, project site.

---

[1] For clarity, this complaint refers to "pre-bankruptcy Westinghouse" when describing conduct prior to the bankruptcy plan's effective date (which is described to provide historical context and is not at issue in this dispute), and "Reorganized Westinghouse" for any post-effective date conduct, which is the focus of this Complaint.

4. In 2017, Westinghouse filed for bankruptcy. Prior to filing bankruptcy, Westinghouse had ordered twenty-four RCPs, but had not purchased the final eight RCPs as called for by the Subcontract.

5. As part of the reorganization plan adopted in the bankruptcy proceeding, Reorganized Westinghouse assumed the obligations of the Subcontract. Through that process, Reorganized Westinghouse agreed to purchase the final eight RCPs called for by the Subcontract.

6. Nevertheless, Reorganized Westinghouse has failed to purchase the final 8 RCPs under the Subcontract since assuming that agreement, and it has not shown any intention to do so. Reorganized Westinghouse is therefore in breach of the Subcontract.

## Parties, Jurisdiction and Venue

7. Plaintiff Curtiss-Wright is a Delaware corporation with a principal place of business in Pennsylvania. It is therefore a citizen of Delaware and Pennsylvania.

8. As an LLC, Defendant Westinghouse Electric Company, LLC takes the citizenship of its members. *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015). On information and belief, Defendant's members are not citizens of Pennsylvania or Delaware.[2]

9. The amount in controversy in this dispute exceeds $75,000.

10. This Court has jurisdiction over this civil action pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between the Parties and the matter in controversy exceeds $75,000.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events giving rise to Curtiss-Wright's claims occurred in this judicial district.

---

[2] *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 108 (3d Cir. 2015) (permitting Plaintiff to plead an LLC's citizenship on information and belief).

12. This Court's exercise of personal jurisdiction over Westinghouse comports with Pennsylvania's long arm statute and Due Process under the United States Constitution.

**Background**

13. Among many other product lines, Curtiss-Wright is in the business of supplying and servicing RCPs to nuclear power plant construction companies. At a basic level, an RCP cools the nuclear power fuel system so that nuclear power plants can operate safely and effectively. RCPs are highly complex products that use sophisticated technology and are critical to the operation of a nuclear power plant.

14. Manufacturing and delivering an RCP is a costly endeavor that requires significant advance planning and investment on behalf of a supplier such as Curtiss-Wright.

15. The Subcontract obligates the purchaser to buy thirty-two RCPs from Curtiss Wright in connection with four project sites ("Projects"), each of which would have two US AP1000 nuclear power plants. In other words, under the Subcontract, Curtiss-Wright agreed to supply four RCPs per US AP1000 nuclear power plant, or eight RCPs per Project.

16. The original parties to the Subcontract agreed to the locations for three of the four Projects: eight RCPs for two US AP1000 nuclear power plants for a site in Florida, eight RCPs for two US AP1000 nuclear power plants for a site in South Carolina, and eight RCPs for two US AP1000 nuclear power plants for a site in Georgia (collectively, the "Named Projects").

17. The parties to the Subcontract agreed to specify the location of the fourth Project at a later date, and pre-bankruptcy Westinghouse committed to purchase eight RCPs for that as-yet unnamed Project (the "Unnamed Project""). That obligation remained outstanding at the time the Chapter 11 proceeding commenced.

18. Other than the location, all of the material terms for the Unnamed Project (such as price, quantity, and various terms and conditions) were agreed upon in the Subcontract.

19. The Subcontract contains a clear and enforceable covenant to purchase eight additional RCPs. It expressly states that it is "a binding, interim measure to document [the purchasing party's] binding award of the Scope of Work for the Projects (defined to include the Unnamed Project) to [Curtiss-Wright]." Elsewhere, the Subcontract uses similar unequivocal language, stating Curtiss-Wright will supply thirty-two RCPs for eight US AP1000 nuclear power plants and making clear that the RCPs related to the Unnamed Project "**will** be utilized in two other AP 1000 Nuclear Power Plants to be awarded to [Curtiss-Wright] in the future." (emphasis added).

20. The Subcontract reflects a reduced per-unit price based on a commitment to purchase thirty-two RCPs for eight US AP1000 nuclear power plants. If the Subcontract had only related to twenty-four RCPs for six US AP1000 nuclear power plants, Curtiss-Wright would have charged significantly more for those RCPs.

**Reorganized Westinghouse Assumes Subcontract and Subsequently Fails to Perform**

21. On March 29, 2017, Westinghouse and certain other affiliates commenced Chapter 11 proceedings in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

22. On March 28, 2018, the Bankruptcy Court approved Debtors' Plan of Reorganization (the "Plan"). As part of the Plan, Reorganized Westinghouse Electric Company, LLC assumed the Subcontract, including the unequivocal obligation to purchase eight additional RCPs associated with the Unnamed Project.

23. Since assuming the Subcontract in 2018, Reorganized Westinghouse has failed to purchase the eight RCPs called for by the Subcontract, nor has it engaged in any conduct indicating that it plans to do so. This failure to perform is a plain breach of the terms of the Subcontract.

24. It is clear from Reorganized Westinghouse's conduct and inaction, that Reorganized Westinghouse does not intend to honor its obligation to purchase the final eight RCPs.

25. Reorganized Westinghouse's breach has damaged Curtiss-Wright in several respects. First, Curtiss-Wright has not received the benefit of the bargain of the Subcontract, because Reorganized Westinghouse has not purchased and paid for the final eight RCPs, Curtiss-Wright is entitled to the benefit of the bargain Reorganized Westinghouse assumed. Reorganized Westinghouse should therefore be compelled to pay Curtiss-Wright the price of the final eight RCPs, which is a total of at least $118,400,000.

26. In the alternative, Curtiss-Wright must be compensated for actions it took in reliance on representations in the Subcontract, namely that that Reorganized Westinghouse would purchase the final eight RCPs associated with the Unnamed Project—obligations that Reorganized Westinghouse became responsible for when it assumed the Subcontract in 2018.

27. In the alternative, Curtiss-Wright also incurred significant overhead costs—including personnel costs and capital expenditures—as a result of Westinghouse's representations that it would purchase thirty-two RCPs for eight US AP1000 nuclear power plants, which Reorganized Westinghouse assumed. In total, Reorganized Westinghouse's refusal to order the final eight RCPs associated with the Unnamed Project under the Subcontract has cost Curtiss-Wright at least $50,900,000 in the form of overhead costs expended in reliance on Subcontract and in the discount Westinghouse received based on its false promise that it would purchase RCPs for eight rather than six US AP1000 nuclear power plants.

## COUNT I – Breach of Contract

28. Curtiss-Wright re-incorporates and re-alleges the preceding paragraphs herein.

29. Reorganized Westinghouse's actions, as set forth herein, constitute a breach of the Subcontract.

30. The Subcontract is a binding agreement that Westinghouse and Curtiss-Wright freely entered. Reorganized Westinghouse freely assumed the Subcontract through the Chapter 11 bankruptcy proceeding.

31. Curtiss-Wright has satisfied all of its obligations under the Subcontract.

32. The commitment to purchase thirty-two RCPs from Curtiss-Wright for eight US AP1000 nuclear power plants is a material term of the Subcontract.

33. Reorganized Westinghouse's failure to purchase the final eight RCPs from Curtiss-Wright for the final two US AP1000 nuclear power plants in the intervening time period after it assumed the Subcontract constitutes a breach of a material term of the Subcontract.

34. Further, if performance is not due because a condition precedent has not yet occurred, Reorganized Westinghouse wrongly prevented that condition precedent from occurring.

35. Curtiss-Wright has satisfied all conditions precedent to filing this action, including by agreeing to mediate its claims with Reorganized Westinghouse.

36. As a direct and proximate result of Reorganized Westinghouse's breach of the Subcontract, Curtiss-Wright has suffered and will continue to suffer damages in an amount not yet determined but that is estimated to be greater than $118,400,000.

WHEREFORE, Plaintiff Curtiss-Wright prays for the following relief:

a. Judgment to be granted in its favor, requiring Defendant Westinghouse to pay compensatory and punitive damages in an amount to be determined;

b. An award of reasonable attorneys' fees; and

c. Such additional relief as the Court may deem just or equitable.

- 7 -

Dated June 28, 2021					By: */s/ Jason E. Hazlewood*

                                                    Jason E. Hazlewood (Pennsylvania Bar No. 93443)
Reed Smith LLP
225 Fifth Avenue
Pittsburgh, PA 15222
Tel: 412.288.3131
Fax: 412.288.3063
E-Mail: jhazlewood@reedsmith.com

Brian T. Phelps (Pennsylvania Bar No. 326172)
Reed Smith LLP
10 S. Wacker Drive, 40th Floor
Chicago, IL 60606
Tel: 312.207.1000
Fax: 312.207.6400
E-Mail:  bphelps@reedsmith.com

*Attorneys for Plaintiff*
*Curtiss-Wright Electro-Mechanical Corporation*

**CERTIFICATE OF SERVICE**

    I, Jason E. Hazlewood, an attorney, hereby certify that, on June 28 2021, I caused a true and correct copy of the foregoing document to be served on all counsel of record through the Court's ECF system.

                                                                        */s/ Jason E. Hazlewood*